# In the United States Court of Federal Claims

|  |  |
|---|---|
| PETER R. HENRIKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-1899C |
| v. ) | |
| ) | (Filed: October 31, 2022) |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

Jason E. Perry, Law Office of Jason Perry, LLC, Wellington, FL, for Plaintiff.

Anthony F. Schiavetti, Senior Trial Counsel, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were Eric P. Bruskin, Assistant Director, Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General, for Defendant. Major Scott Medlyn, Litigation Attorney, United States Air Force, Joint Base Andrews-Naval Air Facility, MD, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiff in this case, Major ("Maj.") Peter Henrikson, challenges a decision by the United States Air Force ("Air Force") finding him not entitled to disability retirement because he had neither twenty years of service nor an unfitting condition rated at least thirty percent under the Department of Veterans Affairs ("VA") Schedule for Ratings Disabilities ("the VA Schedule"). See 10 U.S.C. § 1201(b)(3). After exhausting the procedures established by the Air Force's disability evaluation system, Maj. Henrikson appealed to the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board") for relief. He contended that the Air Force—which had agreed that Maj. Henrikson's intervertebral disc syndrome rendered him "unfit to perform the duties of [his] office, grade, rank, or rating because of physical disability," 10 U.S.C. § 1201(a)—erred in not finding that his sinusitis and radiculopathy of the left leg were also disabling and/or contributed to his unfitness.

The Board rejected Maj. Henrikson's appeal. He then brought the present lawsuit, claiming that the AFBCMR's decision was arbitrary and capricious and not supported by substantial evidence.

The case is currently before the Court on: (1) the government's motion to dismiss Maj. Henrikson's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"); (2) its alternative motion to dismiss for failure to state a claim under RCFC 12(b)(6); and (3) the parties' cross-motions for judgment on the administrative record.

For the reasons set forth below, the government's motions to dismiss under RCFC 12(b)(1) and 12(b)(6) and its motion for judgment on the administrative record ("MJAR"), ECF No. 11, are **DENIED.** Plaintiff's cross-motion for judgment on the administrative record ("Cross-MJAR"), ECF No. 16, is **GRANTED** and the case is remanded to the AFBCMR for further proceedings consistent with this opinion.

## BACKGROUND

### I.     Statutory/Regulatory Framework

Section 1201(a) of Title 10 provides that "[u]pon a determination by the Secretary concerned that [an eligible service member] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a); see also Dept. of Def. Instruction ("DoDI") 1332.18, Disability Evaluation System (DES) (August 5, 2014) (hereinafter "DoDI 1332.18"), App. 2 to encl. 3, ¶ 2. It further states that to be eligible for disability retirement, the service member must have either twenty years of service or a disability rated at least thirty percent under the VA Schedule. 10 U.S.C §§ 1201(b)(1), (b)(3). If a member has less than twenty years of service and a disability that is rated lower than thirty percent, then he instead may be separated from the service with disability severance pay. 10 U.S.C. § 1203.

In accordance with DoD directives, each military department is required to establish a Disability Evaluation System ("DES") to determine service members' eligibility for disability retirement. DoDI 1332.18, encl. 3, ¶ 1. An eligible service member may be referred for evaluation when he has: (1) "one or more medical conditions that may, individually or collectively, prevent [him] from reasonably performing the duties of [his] office, grade, rank, or rating," (2) "a medical condition that represents an obvious medical risk to [his] health or to the health or safety of other members," or (3) "a medical condition that imposes unreasonable requirements on the military to maintain or protect [him]." DoDI 1332.18, App. 1 to encl. 3, ¶¶ 2(a)(1)–(3).

The Air Force determined Maj. Henrikson's eligibility for disability retirement in accordance with the Integrated Disability Evaluation System ("IDES"). See Admin. R. ("AR") 3, 8, 248–49, ECF No. 10.[1] IDES is a "joint DoD-VA process by which DoD determines whether ill or injured Service members are fit for continued military service and DoD and VA determine

---

[1] There are two other evaluation processes military departments may employ: the Legacy Disability Evaluation System and the Expedited Disability Evaluation System. DoDI 1332.18. Maj. Henrikson originally contended that his case was not subject to IDES, see Pl.'s Cross-MJAR at 8–9, ECF No. 16, but abandoned that argument in his reply, Pl.'s Reply at 10, ECF No. 18 ("withdraw[ing] any claims about that potential error for the time being").

appropriate benefits for Service members who are separated or retired for disability." DoD Manual No. 1332.18 (Vol. 2), Disability Evaluation System (DES) Manual: Integrated Disability Evaluation System (IDES) (August 5, 2014) (hereinafter "IDES Manual"), at 46 (Glossary Part II: Definitions, "IDES").

"Disability evaluation begins . . . when examination, treatment, hospitalization, or substandard performance result in referral to a Medical Evaluation Board (MEB)." Air Force Instruction ("AFI") 36-3212, Physical Evaluation for Retention, Retirement, and Separation (February 2, 2006) (hereinafter "AFI 36-3212"), Ch. 1.3 ("Eligibility for Disability Evaluation"). The MEB's job is to assess whether "the Service member has a medical condition that will prevent them from reasonably performing the duties of their office, grade, rank, or rating." DoDI 1332.18, encl. 3, § 2(d).

If the MEB determines that the member cannot perform the duties of their office, grade, rank, or rating due to disability, it refers the member's case to an informal Physical Evaluation Board ("IPEB"). Id. "The IPEB reviews the case file to make initial findings and recommendations" as to the service member's fitness for duty. Id. at § 3(b). If the IPEB finds that one or more conditions are unfitting, it applies the VA's disability ratings "using the diagnostic code(s) provided by the [VA] to the Service member's unfitting conditions." DoDI 1332.18, App. 10 to encl. 4, ¶ 2(b).

A service member who is found unfit may accept the findings of the IPEB, attempt to rebut them, or request a hearing by a formal PEB ("FPEB"). DoDI 1332.18, encl. 3, § 3(c). If a member requests a hearing, the FPEB considers the IPEB's recommendations and then makes its own findings regarding the member's fitness to perform his or her military duties and, if applicable, eligibility for benefits pursuant to 10 U.S.C. Ch. 61; see also IDES Manual, App. 10 to encl. 4, ¶ 3(c) (providing that the FPEB must "[c]oordinate recommendations to change the status of conditions between fit and unfit . . . to ensure [the] VA's proposed rating accurately reflects the PEB's final recommendation of unfitting conditions").

An Air Force member who disagrees with the FPEB's recommended findings may submit a written rebuttal to the Secretary of the Air Force Personnel Council ("SAFPC"). See AFI 36-3212, Ch. 5, § 5A, ¶ 5.4.1; see also id. at Ch. 8, § 8E, ¶ 8.21.10.2 (explaining that a "[m]ember will be allowed 14 calendar days from [the] date of receipt of [the] FPEB recommendation to submit a rebuttal"). The case is then reviewed by the Air Force Personnel Board ("AFPB"), a body within the SAFPC. Id. at Ch. 5, § 5A, ¶ 5.5; see also id. at Ch. 8, § 8E, ¶¶ 8.21.10.3, 8.21.11.

Based upon its review, the AFPB recommends the "final disposition" of the matter to the SAFPC. See id. at Ch. 5, § 5A, ¶ 5.7. The SAFPC "acts on behalf of the [Secretary of the Air Force]" in carrying out the provisions of Title 10 concerning fitness for continued duty and entitlement to disability retirement or severance pay. Id. at Ch. 1.2.2; see also id. at Ch. 5, § 5A, ¶ 5.1 (characterizing the SAFPC as "the action agency within the Office of the Secretary of the Air Force (OSAF)" that "reviews disability cases and announces the final decision of the Secretary").

3

The SAFPC has discretion to direct a variety of actions in response to the AFPB's recommendations. See id. ¶ 5.9. If it finds the member unfit, it may direct that the member be retired or discharged with or without disability benefits. Id. ¶ 5.9.5; see also 10 U.S.C. §§ 1201 (disability retirement where unfitting condition rated 30% disabling or higher), 1203 (severance pay where disability rated lower than 30%).

A service member who believes that the disposition of his case constitutes an error or manifest injustice may appeal the Air Force's determination to the AFBCMR. 10 U.S.C. § 1552; AFI 36-3212, Ch. 5, § 5C, ¶ 5.20. Alternatively, he may file an action in this court. See 28 U.S.C. § 1491(a)(1).

## II. The Air Force's Finding That Maj. Henrikson Did Not Suffer From Unfitting Conditions Rated 30% or Higher

### A. Major Henrikson's Service

Maj. Henrikson enlisted in the United States Marine Corps Reserve in 1994. AR 225; Compl. ¶ 5, ECF No. 1. On August 17, 1998, he transferred to active duty as a pilot trainee in the Air Force Officer Training School. AR 9, 225–26; Compl. ¶ 5. Maj. Henrikson served on active duty in the Air Force as an F-16 pilot until July 26, 2008, when he transferred to the Minnesota Air National Guard as a pilot in the Active Guard and Reserve Program. AR 9, 226; Compl. ¶ 5. He was honorably discharged from the Minnesota Air National Guard on July 23, 2012. AR 354. Thereafter, and until the 2016 discharge at issue in this case, Maj. Henrikson continued to serve part-time in the United States Air Force Reserve in a non-flying position. AR 9, 209, 226; Compl. ¶ 5.

### B. The Air Force's Fitness Determination

#### 1. Referral to the MEB

Maj. Henrikson has a history of intermittent lower back pain that dates back to 2001. AR 223. He also has a "long history of rhinosinusitis," for which he underwent surgery in 2002. Id. In addition, in 2011, Maj. Henrikson was diagnosed with nephron/ureterolithiasis. Id.

Maj. Henrikson applied for VA benefits on January 27, 2012 some six months before he was discharged from the Minnesota Air National Guard. AR 346. On April 19, 2013, the VA issued its rating decision, assigning Maj. Henrikson a 70% combined rating based on four service-connected disabilities: (1) "chronic sinusitis," (2) "kidney stones"; (3) "intervertebral disc syndrome and recurrent sprain, lumbosacral spine" (hereinafter "intervertebral disc syndrome"); and (4) "radiculopathy, left lower extremity associated with intervertebral disc syndrome and recurrent sprain, lumbosacral spine" (hereinafter "radiculopathy"). See AR 346 (2013 VA rating decision).

Several months later, on June 13, 2013, the Air Force's Deployment Availability Working Group notified Maj. Henrikson that his medical conditions had "duty, fitness and mobility restricting implications." AR 26. An MEB was therefore convened, and on December 23, 2014 it issued a report. AR 27.

4

The MEB concluded that Maj. Henrikson suffered from three conditions which "contribute or may contribute to mak[ing]" his "qualifications . . . for worldwide duty questionable." Id. These potentially unfitting conditions were "Sinusitis/Rhinitis," "Recurrent nephrolithiasis/ureterolithiasis," and "Sciatica, intervertebral disc syndrome." Id. In the narrative summary accompanying the report, the Flight Surgeon for Maj. Henrikson's squadron wrote that "by [Maj. Henrikson's] own admission" Maj. Henrikson was "unfit for further military duties, both as a pilot and permanently DNIF without waiverable conditions, and as a non-flyer given his service-connected lumbar disc and radiculopathy symptoms significantly restricting his ability to ambulate." AR 30. The Flight Surgeon recommended, "with deep regret . . . that this honored fighter pilot be separated/retired from the military as he is no longer fit for duty, without recovery potential within this reasonable degree of medical certainty." AR 31. The MEB therefore referred Maj. Henrikson's case to an IPEB. AR 27.

### 2. The IPEB's Findings

On January 7, 2015, the IPEB issued its initial findings and recommended disposition of Maj. Henrikson's case. AR 248–49. It listed "Sciatica, Intervertebral Disc Syndrome" as an unfitting condition. AR 249. On the other hand, it found that Maj. Henrikson's sinusitis/rhinitis and his recurrent nephrolithiasis were conditions that "can be unfitting" but were "not currently unfitting." Id.

Consistent with the IDES process, the IPEB requested that the VA provide disability ratings for the referred and claimed conditions the IPEB had identified. AR 248; see also IDES Manual, encl. 3, ¶ 2(p) (explaining that the VA's disability rating system is used to assign a rating to the unfitting conditions the IPEB identifies); id. encl. 3, ¶ 1 (providing that, under the IDES, the DoD and VA evaluation processes are combined, and "a single set of disability examinations" is performed).

On March 18, 2015, in response to the IPEB's request, the VA issued a decision regarding Maj. Henrikson's entitlement to VA benefits. It assigned a combined 70% disability rating for the conditions identified in the IPEB report, including those that the IPEB found not currently unfitting. AR 43. As it had in 2013, see AR 346–48, the VA rated Maj. Henrikson's "radiculopathy, left lower extremity" as 20% disabling, AR 41, and assigned a 20% rating to his "intervertebral disc syndrome and recurrent sprain, lumbosacral spine," AR 42. The VA explained in the report that it had applied a 20% rating to the radiculopathy "for incomplete paralysis below the knee which is moderate" and that "[a] higher evaluation of 40% is not warranted unless there is evidence of incomplete paralysis below the knee which is moderately severe." AR 41.

In a March 24, 2015 report, the IPEB added "Radiculopathy, Left Lower Extremity" as a second unfitting condition. AR 37. It updated its findings and recommended a disposition that reflected the ratings the VA had applied to both Maj. Henrikson's radiculopathy and his intervertebral disc syndrome. AR 37–38.

In the narrative portion of its report, the IPEB explained that Maj. Henrikson "has a history of intermittent low back pain since 2001." AR 38. It further stated that he "currently experiences daily mild to severe low back pain with intermittent mild left lower extremity

numbness," but that "[n]o signs of radiculopathy were noted" during the VA exam. Id. The IPEB noted that his "back issues" were "reported to be mobility restricting" and "make it difficult for him to perform exercises and meet Air Force physical fitness standards," and that "[t]his condition is unfitting." Id. The IPEB then considered the other conditions the VA had rated ("chronic sinusitis" and "kidney stones (also diagnosed as nephrolithiasis and ureterolithiasis)"), AR 42, finding them not currently unfitting either separately or collectively, AR 38.

After finding that none of Maj. Henrikson's conditions were incurred in a combat zone or during the performance of duty in combat-related operations, the IPEB recommended that he be permanently retired with a combined disability rating of 40%, based on his intervertebral disc syndrome and radiculopathy. AR 37–38.

### 3. Proceedings Before the FPEB

On April 8, 2015, Maj. Henrikson submitted an AF Form 1180. AR 62–63 (Action on IPEB Findings and Recommended Disposition). In it, he stated that he agreed with the IPEB's finding that his sciatica/radiculopathy were unfitting conditions but argued that the conditions should also have been found combat-related. AR 62. He further argued that the IPEB should have found his chronic sinusitis unfitting. Id. Finally, he invoked his right to have an FPEB convened to consider these claims. AR 62–63.

On May 11, 2015, Maj. Henrikson submitted an additional letter "to provide background for [his] decision to request a formal PEB." AR 71–73. He reiterated his disagreement with the IPEB's finding that his back conditions were not combat-related. AR 71. He again argued that the IPEB erred when it found his sinusitis not currently unfitting. Id. Among other things, he referenced records documenting "visits to the flight surgeon for sinusitis" at times when he "was not able to perform flying duties" and stated further that this list was "not all-inclusive as there were several [other] occasions when [he] did not seek medical attention but did not fly due to symptoms." AR 73.

Maj. Henrikson also submitted a May 14, 2015 letter from his commanding officer, Lieutenant Colonel ("Lt. Col.") Stephen Nelson. AR 34–35; see also AFI 36-3212, Ch. 2.4 (stating that "[e]xcept in situations of critical illness or injury in which return to duty is not expected, a written statement from the member's immediate commanding officer or supervisor describing the impact of the member's medical condition on normal military duties and ability to deploy or mobilize, as applicable, will be submitted with the documentation required by AFI 48-123"). In it, Lt. Col. Nelson stated, among other things, that Maj. Henrikson's "back and nerve issues ha[d] made it impossible for him to maintain the medical standards required to return to flight status." AR 34 (letter of May 14, 2015, addressed to MEB/PEB).

The FPEB issued its findings on June 16, 2015. AR 66–67. It agreed with the IPEB's determination that Maj. Henrikson's "Sciatica, Intervertebral Disc Syndrome" was unfitting. AR 66. Like the IPEB, the FPEB also acknowledged Maj. Henrikson's "history of chronic intermittent low back pain" and that "[h]e currently reports experiencing daily mild to severe low back pain with left lower extremity numbness," rendering his sciatica "unfitting for continued military service." AR 67. It adopted the 20% disability rating the VA had assigned to the condition. AR 66.

6

The FPEB disagreed, however, with the IPEB's finding that Maj. Henrikson's radiculopathy was unfitting. Id. It cited the report of the VA's October 2014 examination, which noted that Maj. Henrikson "showed normal strength in bilateral lower extremities, normal reflexes, normal sensation and no muscle atrophy," and that his "left lower extremity pain and numbness [we]re rated as mild." AR 67; see also AR 293–300 (VA Compensation and Pension Exam Report). The FPEB stated that "[r]ecords reveal that this condition has consistently been documented as intermittent in nature." AR 67. Although it noted its "appreciat[ion] that Maj. Henrikson reports experiencing intermittent radicular symptoms," the FPEB concluded that there was not "substantial evidence to support the left lower extremity radiculopathy as an unfitting condition." Id.

The FPEB agreed with the IPEB's finding that Maj. Henrikson's sinusitis/rhinitis and recurrent nephrolithiasis were not unfitting and that none of his conditions were combat-related. AR 66. It recommended that Maj. Henrikson be discharged with severance pay based on intervertebral disc syndrome at a 20% disability rating. AR 66–67.

### 4.     Proceedings Before the Secretary of Air Force Personnel

On June 16, 2015, Maj. Henrikson exercised his right to challenge the FPEB's recommended findings before the SAFPC by submitting another Form 1180. AR 207; see also AFI 36-3212, Ch. 3, § 3D, ¶ 3.38.1. In a June 25, 2015 letter he took issue with the IPEB and FPEB's determinations that none of his conditions were combat-related and that his sinusitis was not unfitting. AR 75–76. He also took issue with the FPEB's decision to "overturn[] the [IPEB's] finding of radiculopathy . . . as being an unfitting condition." AR 75.

With respect to the latter, Maj. Henrikson asserted that the FPEB had relied unduly on the VA's October 30, 2014 report when it characterized his radiculopathy symptoms as mild. Id. Maj. Henrikson contended that this characterization was inconsistent with the FPEB's other comments that described him as suffering from "mild to severe low back pain and left lower extremity numbness." Id. Maj. Henrikson also contended that the finding that his radiculopathy was not unfitting conflicted with: (1) the 20% disability rating the VA had assigned to the condition; (2) other examinations that were conducted by his squadron's flight surgeons; and (3) "years of medical documentation indicating that this is an unfitting condition." Id.

Maj. Henrikson submitted a second letter the next day (June 26, 2015) through his appointed counsel. AR 77–80. He again expressed disagreement with the FPEB's finding that his intervertebral disc syndrome was not combat-related and that his radiculopathy and chronic sinusitis were not unfitting. Id. Specifically, Maj. Henrikson reiterated that "[h]e currently reports experiencing daily mild to severe lower back pain with left lower extremity numbness" and that his "back issues and radicular symptoms make it difficult for him to perform exercises and meet Air Force physical fitness standards." AR 77. He added that during his FPEB hearing on June 16, 2015, "while he was sitting and giving his telephonic testimony . . . his left leg was going numb." Id.

On January 12, 2016, the SAFPC issued a decision rejecting Maj. Henrikson's arguments and directing that he "be discharged and receive severance pay with a disability rating of [twenty] percent." AR 90. The SAFPC noted that it had "considered all of Major Henrikson's

contentions" and that it had reviewed the facts and evidence presented to the IPEB and FPEB, as well as those boards' findings, the MEB's findings, the medical records presented, the VA records, and the information submitted by Maj. Henrikson. Id.

The SAFPC, like the FPEB, found it noteworthy that the VA exam had revealed a "normal range of motion, normal strength in bilateral lower extremities, normal reflexes, normal sensation and no muscle atrophy." AR 91. It "acknowledge[d] that Major Henrikson report[ed] experiencing radicular symptoms," but explained "that the singular presence of a medical condition or medical symptoms does not in itself indicate that a particular condition is unfitting for duty." Id. It further reasoned that there was "insufficient evidence that [his] left lower radiculopathy . . . required frequent treatment or impaired his duty performance," and that the condition "did not require duty restrictions, preclude [him] from deployment or necessitate aeromedical waivers." Id.

The SAFPC similarly found insufficient evidence that Maj. Henrikson's sinusitis required frequent treatment or impaired his duty performance. It noted that he had functional endoscopic sinus surgery in 2002 and that, since then, his records documented only sporadic treatment of rhinosinusitis without complication. Id. It further observed that he had testified to having three-to-four episodes of sinusitis per year, which he treated with medication and that his commander had indicated that he was able to perform his then-current duties. Id.

On February 10, 2016, Maj. Henrikson requested that the SAFPC reconsider its decision based on what he alleged was "new evidence that was not previously considered." AR 93–94 (letter from Maj. Henrikson's counsel). He complained that the SAFPC had reviewed his appeal without having received supporting evidence from his civilian medical providers. AR 95. He again outlined in detail his conditions and his contentions that they were unfitting. See AR 95–99. He also submitted an additional sixty-two pages of documents, which included four physicians' letters, certain medical records and two letters from his commanding officer. AR 101–162.

The SAFPC denied Maj. Henrikson's request for reconsideration on February 19, 2016. AR 159. It asserted that its review of the information Maj. Henrikson provided revealed "no newly discovered, relevant evidence." Id. The SAFPC's January 12, 2016 determination that Maj. Henrikson should be discharged with severance pay pursuant to 10 U.S.C. § 1203 was made final, with an effective date of March 28, 2016. AR 164–65.

### III. Transfer to the Inactive Status List Reserve Section

On February 1, 2016, Maj. Henrikson elected to transfer to the Inactive Status List Reserve Section ("ISLRS") rather than be discharged with severance pay. AR 188. His transfer was effected pursuant to 10 U.S.C. § 12735(a), which states that a service member "who would be eligible for retired pay . . . but for the fact that that member is under 60 years of age may be transferred, at his request and by direction of the Secretary concerned, to [the ISLRS]." See also 10 U.S.C. § 1209 (providing that a service member with at least twenty years of service who would otherwise be eligible for retirement but for the fact that his disability has been rated less than 30% under the VA Schedule for Ratings Disabilities "may elect, instead of being separated under this chapter, to be transferred to the inactive status list under section 12735 of this title

and, if otherwise eligible, to receive retired pay under section 12739 of this title upon becoming 60 years of age"); AFI 36-3212, Ch. 8, § 8D, ¶ 8.18 ("Inactive Status List (ISL) Transfers").

### IV. Maj. Henrikson's Petition to the Air Force Board for Correction of Military Records

On June 28, 2017, Maj. Henrikson petitioned the AFBCMR, asking that his records be corrected to reflect that his sinus condition and radiculopathy were unfitting conditions and that he be retired with a 60% disability rating. AR 1, 6, 8, 10.[2] Maj. Henrikson contended that the FPEB and SAFPC erred when they allegedly based their fitness determinations on his ability to perform administrative tasks rather than his ability to "pilot an F-16 aircraft in a combat or worldwide deployable environment." AR 1. He argued that the evidence showed that his sinusitis, back pain, and radiculopathy rendered him "unable to pilot an F-16 in any environment, much less in a combat or deployed environment." Id.

In support of his application, Maj. Henrikson submitted a memorandum further outlining his claims. AR 8–24. He also submitted the documents that were before the MEB, AR 25–35, the IPEB, AR 36–64, the FPEB, AR 65–73, and the SAFPC, AR 74–162. In addition, he submitted a new February 10, 2017 letter from his former commander, Lt. Col. Nelson. AR 160–62.

### V. The AFBCMR's Decision

AFBCMR Medical Advisor, Dr. Melinda Sutton, reviewed Maj. Henrikson's case file. AR 365–68. In an October 5, 2018 memorandum to the Board she recommended that Maj. Henrikson's request for correction of his record be denied. Id.

In her memorandum, under the caption "FACTS," Dr. Sutton provided a timeline of relevant events that recited the conclusions the MEB, IPEB, FPEB, and SAFPC had reached. AR 365–67. In the "DISCUSSION" section of her memorandum, Dr. Sutton did not mention the new medical records Maj. Henrikson had provided when he requested reconsideration by the SAFPC or the letters from Maj. Henrikson's commanding officer. AR 367–68. She simply observed that there "[did] not appear to be any impropriety in the consideration of the applicant's case during the IDES process and his subsequent retirement and placement on the [ISLRS]." AR 367. She also noted that the VA's disability benefits determinations are independent of the Air Force's discharge decisions "in that conditions service connected and rated by the [VA] are not necessar[il]y the same conditions that prompted the fitness for duty evaluation and subsequent IDES consideration." AR 367–68. "Furthermore," she explained that "the singular presence of a medical condition or medical symptoms does not in itself indicate that a particular condition is unfitting for duty," and that "the history of a condition or symptoms that previously affected the member's duty status does not necessarily indicate that the condition is unfitting at the present time." AR 368.

---

[2] Maj. Henrikson also requested that his radiculopathy and intervertebral disc syndrome be classified as combat-related. AR 10. He does not pursue that claim here. Pl.'s Cross-MJAR at 3.

On October 9, 2018, Dr. Sutton's recommendation was forwarded to Maj. Henrikson for his review and comment. AR 364. Maj. Henrikson did not provide any comments in response.

The Board convened on March 27, 2019 and considered Maj. Henrikson's application and attachments, as well as Dr. Sutton's recommendation. AR 1–4. According to the Board, it understood Maj. Henrikson's contention to be that the FPEB and SAFPC erred when they focused on the applicant's ability to perform administrative tasks, rather than his ability to "pilot an F-16 aircraft in a combat or worldwide deployable environment." AR 1. It did not, however, address that contention in its opinion.

Instead, the Board's opinion incorporated Dr. Sutton's timeline, and noted that Dr. Sutton had recommended that the Board deny the application for relief. AR 1–2. In a section entitled "AIR FORCE EVALUATION" it recited essentially verbatim the relevant findings of the physical evaluation boards and the SAFPC. AR 2-3. With respect to Maj. Henrikson's sinusitis, the Board quoted the IPEB's observation that "[h]e reported still having 3-4 episodes of sinusitis per year that does not interfere with activities of daily living or occupation." AR 2–3. Regarding the radiculopathy, the Board quoted the FPEB's characterization of the results of the October 30, 2014 VA examination and its statement that Maj. Henrikson had not had the condition evaluated since that examination. AR 3. The Board then repeated Dr. Sutton's observations that "[s]ervice connected medical conditions rated by the [VA] are not necessarily the same conditions that prompted the fitness for duty evaluation and subsequent IDES consideration," that "the singular presence of a medical condition or symptoms does not necessarily indicate that a particular condition is unfitting for duty," and that the history of a condition or symptoms that previously affected a service member's duty does not necessarily indicate that the condition is unfitting now." AR 3.

The Board concluded as follows:

> After thoroughly reviewing all Exhibits, it is the Board's opinion that the applicant is not the victim of an error or injustice. The Board concurs with the rationale and recommendation of the BCMR Medical Advisor and finds that a preponderance of the evidence does not substantiate the applicant's contentions. Therefore, the Board recommends against correcting the applicant's records.

Id.

### VI. The Present Case

Maj. Henrikson filed his Complaint in this court on September 24, 2021. Compl. He contends that he "was improperly rated at 20% for his unfitting disabilities and should have been rated at least 60% disabled and retired as of his placement on the ISLR[S]." Id. at ¶ 19. He claims the AFBCMR's decision was arbitrary, capricious, contrary to law, and not supported by substantial evidence. Id. at ¶ 17.

On February 7, 2022, the government filed a motion to dismiss Maj. Henrikson's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim pursuant to RCFC 12(b)(6). Def.'s Mot. to Dismiss and MJAR, ECF No. 11. It also moved in the alternative for judgment on the administrative record. See generally id. Maj. Henrikson, in turn,

has filed an opposition to the government's motions to dismiss, as well as his own cross-motion for judgment on the administrative record. Pl.'s Cross-MJAR. Oral argument was held on the parties' motions on October 26, 2022.

## DISCUSSION

### I. Jurisdiction

As noted, the government has moved to dismiss this case under RCFC 12(b)(1) based on lack of subject matter jurisdiction. It contends that Maj. Henrikson's claims are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. The government's arguments are unpersuasive.

In considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff, however, bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013). The Court may "inquire into jurisdictional facts" to determine whether it has jurisdiction, Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991), and in doing so may consider evidentiary facts outside the pleadings, Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify a statute or regulation that supplies a substantive right to recover money damages from the United States. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

It is well established that 10 U.S.C. § 1201(a) is a money-mandating statute and that a claimed violation of the statute therefore triggers this court's Tucker Act jurisdiction. Jones v. United States, 30 F.4th 1094, 1100 (Fed. Cir. 2022); Fisher v. United States, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991)). Actions in this court, however, are subject to 28 U.S.C. § 2501, a six-year limitations period that is jurisdictional in nature. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133–34 (2008); San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011). Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This Court therefore has jurisdiction over Maj. Henrikson's disability retirement claim so long as it accrued no earlier than September 24, 2015, i.e., six years before he filed his complaint in this court. See Compl. (filed Sept. 24, 2021).

11

"A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240 (1966)). A service member's claim that he has been wrongfully discharged accrues upon discharge. Id. The rule is different, however, with respect to the accrual of disability retirement claims. Because "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability," Friedman v. United States, 310 F.2d 381, 389 (Ct. Cl. 1962), "a military board must determine eligibility for disability retirement before such a claim accrues." Chambers v. United States, 417 F.3d 1218, 1226 (Fed. Cir. 2005). Therefore, under what has come to be known as "the first competent board" rule, claims concerning a service member's entitlement to disability retirement pay do not accrue until "the appropriate military board either finally denies such a claim or refuses to hear it." Id. at 1224; see also Friedman v. United States, 159 Ct. Cl. 1, 24 (1962) (explaining that a claim that a service member has been improperly denied disability retirement "does not accrue on release from active duty but rather on final action of a board competent to pass upon eligibility for disability retirement (or upon refusal of a request for such a board)").

The government contends that the FPEB "is a board within the meaning of the first competent board rule." Def.'s MJAR at 16. Therefore, according to the government, when the FPEB made findings regarding Maj. Henrikson's fitness for duty, recommended his discharge with severance pay, and found him not entitled to retire based on disability, "all events had occurred to fix the Government's alleged liability, entitling Maj. Henrikson to demand payment and sue here for his money." Id. at 17 (citing Martinez, 333 F.3d at 1303). It asserts that Maj. Henrikson's choice to pursue relief before the SAFPC "did not toll or restart the statute of limitations." Id.

The government's arguments lack merit. Maj. Henrikson's claim did not accrue when the FPEB issued its decision because the FPEB did not "finally den[y]" it. Id. at 16. Rather, the FPEB made findings and recommendations to which Maj. Henrikson had a right to object under the governing Air Force Instructions. AFI 36-3212, ¶ 5.4.1 (requiring that a case be forwarded to the SAFPC for further action where the service member "does not concur and/or submits a written rebuttal to the recommended findings of the PEB"). Under the Air Force's disability evaluation system, when such objections are filed, the FPEB's recommendations do not control. Instead, the claim must be presented to the SAFPC for decision.

The SAFPC "acts on behalf of the [Secretary of the Air Force]" in carrying out the provisions of Title 10 concerning fitness for continued duty and entitlement to disability retirement or severance pay. AFI 36-3212, Ch. 1.2.2; see also id. at Ch. 5, § 5A, ¶ 5.1 ("Under authority of Title 10 U.S.C. 1216, chapter 61, the [Secretary of the Air Force] retires or separates individuals found unfit to perform the duties of their office or grade due to physical disability. As the action agency within the Office of the Secretary of the Air Force (OSAF), the SAFPC reviews disability cases and announces the final decision of the Secretary.").

The government's contentions that "[a]pplication to the SAFPC is plainly permissive" and that "no exhaustion of this potential remedy is required prior to the filing of suit" miss the

12

point. See Def.'s Resp. at 2–3, ECF No. 17 (citing AFI 36-3212, Ch. 5, § 5A, ¶¶ 5.3.1, 5.4.1). Under the regulations, service members are entitled to rebut the FPEB's findings and recommendations. Doing so triggers the forwarding of their claim to SAFPC which then makes a final decision on behalf of the Secretary of the Air Force. AFI 36-3212, Ch. 5, § 5A, ¶ 5.1.

Because Maj. Henrikson invoked his right to further review, his disability retirement claim did not accrue until after the SAFPC resolved his objections to the FPEB's findings and recommendations. See Furlong v. United States, 152 F.Supp. 238, 240–41 (Ct. Cl. 1957) (noting that this court "cannot acquire jurisdiction of [a disability retirement] claim until after the board and the Secretary have acted") (emphasis added). As the court explained in Furlong,

> The principle of these cases is: first, jurisdiction is conferred by Congress, not on this court, but on retiring boards and the Secretaries of the three armed services, to decide an officer's right to retirement for physical disability, and his consequent right to retired pay; second, it follows therefrom that we cannot acquire jurisdiction of such a claim until after the board and the Secretary have acted, or failed or refused to act, and not then unless the board and the Secretary acted arbitrarily or capriciously or contrary to law; third, since our jurisdiction could not be invoked until after the retiring board and the Secretary had acted, the statute of limitations on a suit in this court did not begin to run until they had acted."

Id. (emphasis added).

In short, because "final action" on Maj. Henrikson's disability retirement claim was not taken until the SAFPC directed that he be discharged on January 12, 2016, that is the date that his claim accrued. Because the complaint in this case was filed less than six years after January 12, 2016, it is not barred by the statute of limitations.

## II. Motion to Dismiss Based on Non-Justiciability

The government has also filed a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6). It contends that Maj. Henrikson's claims are not justiciable because they "constitute[] a challenge to the Air Force's determinations regarding [his] fitness to serve in the Air Force," determinations the government says "belong[] to the Air Force, not the courts." Def. MJAR at 20. The government's argument lacks merit.

It is well established that "determining who is fit or unfit to serve in the armed services is not a judicial province." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). But the upshot of that principle is not, as the government would have it, that all determinations related to fitness are non-justiciable. In this case, the issue before the Court "is not the composition of the military, but the society's legal obligations to those who are no longer within the military forces." Fisher, 402 F.3d at 1182. In that circumstance, the court of appeals has noted, "the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay." Id. at 1180; see also Haskins v. United States, 51 Fed. Cl. 818, 823 (2002) (citing the "many decisions of this court and of the Court of Appeals for the Federal Circuit [that] have addressed military personnel requests for money based on their entitlement to a different retirement status").

13

To be sure, and as discussed in greater detail below, "[t]he cases are consistent that this review is conducted under a deferential standard." Fisher, 402 F.3d at 1180. But the government's argument—that disability retirement decisions are entirely unreviewable—lacks merit. The government's motion to dismiss under RCFC 12(b)(6), based on non-justiciability, therefore must be denied.

### III. Cross Motions for Judgment on the Administrative Record

The Court of Federal Claims reviews decisions of military correction boards on the basis of the administrative record. See, e.g., Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties may move for judgment on the administrative record pursuant to RCFC 52.1. In ruling on such a motion, the court makes "factual findings from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). As distinguished from summary judgment proceedings, genuine issues of material fact do not foreclose judgment on the administrative record. See id. at 1356.

As noted, the scope of review of the decision of a military correction board is a narrow and deferential one. The Court is "'limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig, 719 F.2d at 1156); see also Chappell v. Wallace, 462 U.S. 296, 303 (1983) (decision of the Board for the Correction of Naval Records is "subject to judicial review" and may be set aside if it is "arbitrary, capricious or not based on substantial evidence"). Application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Strand v. United States, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (internal quotation omitted). The Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

In this case, the AFBCMR agreed with its Medical Advisor's conclusion that Maj. Henrikson was not entitled to a correction of his record to reflect a medical retirement with a disability rating of sixty percent. Its opinion, however, provides little insight into its reasoning. The Board restated Dr. Sutton's conclusory statement that "[t]here does not appear to be any impropriety in consideration of the applicant's case during the IDES process." AR 2. The Board restated the findings of the FPEB. AR 2–3. Then, like Dr. Sutton, the Board recited the general principles that distinguish the ratings decisions of the VA from the military's fitness for duty determinations. AR 3. Finally, and with no further explanation, it announced that it "concur[red] with the rationale and recommendation of the BCMR Medical Advisor and [found] that a preponderance of the evidence does not substantiate the applicant's contentions." Id.

Maj. Henrikson contends that the AFBCMR's decision is arbitrary and capricious because it did not address a number of the arguments he made before the Board; nor did it appear to have reviewed relevant evidence he submitted. Indeed, he posits, "the lack of any discussion of a single piece of evidence suggests that the AFBCMR may not have actually reviewed the submissions in this case." Pl.'s Cross-MJAR at 8.

14

Military corrections boards need not explain their reasoning "in great detail." Craft v. United States, 544 F.2d 468, 474 (Ct. Cl. 1976); see also Boyer v. United States, 323 F. App'x 917, 920 (Fed. Cir. 2009). But here, neither the Board nor its Medical Advisor addressed what the Board seemed to acknowledge was Maj. Henrikson's central contention: that the FPEB and SAFPC failed to focus their fitness determinations on the effect of his radiculopathy and sinusitis on his ability to pilot an F-16 aircraft in a combat or deployed environment. Rather, he claimed, they focused on their effect on his ability to perform the administrative work to which he had been reassigned. See AR 1–3; AR 20–23.

To be sure, a corrections board is not obligated to respond to every argument an applicant might make. Nonetheless, the question of which duties are the proper focus of the fitness inquiry—Maj. Henrikson's ability to pilot a fighter plane or his ability to perform administrative work—seems to the Court a critical and potentially outcome-determinative one. The Court cannot perform its narrow review function without understanding the benchmarks against which the Board evaluated Maj. Henrikson's fitness.

The DoD Instruction states that a service member shall be found unfit where he "is unable to reasonably perform duties of his or her office, grade, rank, or rating." DoDI 1332.18 App. 2 to encl. 3, ¶ 2a. The Court needs the benefit of the Board's views concerning what duties someone in Maj. Henrikson's office, grade, rank, or rating can be reasonably expected to perform to determine whether substantial evidence supports the Board's decision that Maj. Henrikson's sinusitis and radiculopathy did not render him unfit to perform those duties.

The Court also agrees with Maj. Henrikson that the Board did not discuss relevant evidence that may contradict the conclusions of the FPEB and the SAFPC regarding the severity or effect of his radiculopathy on his ability to perform the duties of his office, grade, rank, or rating. That evidence includes both medical reports and letters written by Maj. Henrikson's commanding officer, Lt. Col Nelson.

While Lt. Col. Nelson is not a physician, in a letter prepared for submission to the Board, he offered his "professional, non-medical, opinion of Maj[.] Henrikson's condition based on [his] 23 years of experience flying high performance fighter aircraft." AR 161. Lt. Col. Nelson explained that over this twenty-three-year period he had seen more than twenty pilots declared unfit for flight status based on "neck and back issues" which "manifested themselves in tingling and numbness in the legs and/or arms of the individual" which made "standing and/or sitting for an extended period very uncomfortable." Id. Lt. Col. Nelson opined that based on his experience, flying aircraft "requires the full range of motion" and that "any 'tingling, numbness, weakness' in the legs and/or arms that [he] witnessed Maj[.] Henrikson experience would make flying the aircraft very difficult as well as dangerous." AR 162; see also AR 216 (May 2015 letter from Lt. Col. Nelson stating that "loss of feeling in extremities and the corresponding discomfort to the individual make return to flight status impossible"). He explained that such weakness "would make it very difficult to use the rudder pedals as well as the nose wheel steering the aircraft" and would "make it extremely difficult to manipulate the controls in a high G environment." AR 162. He also observed that in addition to being removed from flight status, Maj. Henrikson had to be removed from deployment status because "[a]fter observing his difficulties sitting/standing at a desk . . . Maj. Henrikson would be a liability in any deployed environment." Id.; see also DoDI

15

1332.18 App. 2 to encl. 3, ¶ 4(a)(3) (stating that consideration of deployability is relevant to determining whether a service member can perform his duties).

Also relevant is the January 29, 2016 medical report prepared by Dr. Mark Wylie, who examined Maj. Henrikson in October and November 2015. AR 103-105. Especially when coupled with Lt. Col. Nelson's observations, Dr. Wylie's report supports Maj. Henrikson's claim that his radiculopathy rendered him unfit to perform his duties as a fighter pilot (and possibly also unfit to perform his administrative duties). Yet the Board not only failed to discuss Dr. Wylie's report, it appears to have been unaware of its existence. AR 3 (quoting the FPEB's observation that Maj. Henrikson's radiculopathy had not been evaluated since his VA exam in October 2014.).

Dr. Wylie reported that he had seen Maj. Henrikson "for significant left leg pain, numbness, and tingling in a radicular type pattern for many years" even after he stopped flying F-16s and that he "still has significant problems with this." AR 103. He explained that Maj. Henrikson showed "weakness of his left EHL and tibialis anterior while sitting or standing for a lengthy period of time" and that while his MRI "looks normal while recumbent" when "standing on the x-rays with forward flexion and extension, there is significant motion at L5-S1 causing the radiculitis/radiculopathy on the left." Id. In summary, he found that while Maj. Henrikson was lying down, "his symptoms are better" but "[w]hen up and gravity takes effect, the symptoms get worse consistent with his instability pattern at L5-S1 and his exposures to High-G and high performance maneuvers and high performance military aircraft." AR 104.[3]

The Board likewise did not discuss the narrative summary Maj. Henrikson's Flight Surgeon wrote on August 3, 2014. As set forth above, the Flight Surgeon, who presumably had the opportunity to treat Maj. Henrikson over some period of time, appears to endorse what he characterized as "Maj. Henrikson's own admission" that he was "unfit for further military duties," as a result of "his service connected lumbar disc and radiculopathy symptoms significantly restricting his ability to ambulate." AR 30.

Finally, the Court notes that the Board did not discuss an undated but apparently new letter from ENT Dr. John McIntyre. Dr. McIntyre reviewed Maj. Henrikson's history, a physical exam, and prior medical treatments and opined that "his chronic allergy problems and recurring sinus infections could and will affect his daily work schedule throughout the year," and noted that "[t]hese problems" (also including his sleep apnea) "most certainly did affect his time while flying and could still affect his current non flying job as well." AR 101.

Perhaps the Board could reasonably conclude that the evidence described above does not undermine the Air Force's conclusions regarding whether Maj. Henrikson's radiculopathy and sinusitis were unfitting conditions. It also may make no difference for purposes of making those determinations whether the focus is on Maj. Henrikson's ability to fly aircraft or his ability to perform administrative duties. But the problem for the Court is that because the Board's opinion is so conclusory and unresponsive to Maj. Henrikson's arguments and does not discuss what

---

[3] The Court notes that the record also includes the report of certain diagnostic tests that Dr. Wylie ordered, whose results and relevance require further interpretation. AR 106–09.

appears to be very relevant evidence, the Court cannot tell what the Board was thinking or which evidence it relied upon. And while the Court can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," it "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc., 419 U.S. 281, 285–86 (1974).

At oral argument, government counsel emphasized that the Board expressly represented in its opinion that it had "thoroughly review[ed] all Exhibits." AR 3. But "[a] naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing . . . is inimical to a rational system of administrative determination and ultimately inadequate." Beckham v. United States, 392 F.2d 619, 622–23 (Ct. Cl. 1968). To sustain the Board's decision, the Court must be persuaded that the Board "considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." Fuentes v. United States, 157 Fed. Cl. 433, 453 (2021) (citing Heisig, 719 F.2d at 1157). The Court is not convinced here that the Board discharged these basic obligations, for the reasons set forth above.

Where, as here, a correction board, "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." Rominger v. United States, 72 Fed. Cl. 268, 273 (2006). The Court will therefore remand this case back to the AFBCMR for it to issue a new decision that addresses issues and evidence that the Court believes are critical to its resolution of Maj. Henrikson's appeal.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss and, in the alternative, for judgment on the administrative record, ECF No. 11, is **DENIED**. Maj. Henrikson's cross-motion for judgment on the administrative record, ECF No. 16, is **GRANTED**.

With respect to relief, the Tucker Act states that "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). It also has the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." Id.

Consistent with this authority, the Court **REMANDS** the case to the AFBCMR for reconsideration of Maj. Henrikson's claims that his radiculopathy and sinusitis either individually or collectively with his other medical conditions rendered him unfit to perform the duties of his office, grade, rank, or rating.

In conducting its review, the Board shall, consistent with this opinion:

1. Identify the duties of Maj. Henrikson's office, grade, rank, or rating that he could reasonably be expected to perform and whether piloting aircraft was among those duties;

17

2. Review and consider all of the relevant evidence of record regarding the impact of Maj. Henrikson's sinusitis and radiculopathy on his fitness to perform the duties of his office, grade, rank, or rating, including but not limited to the evidence the Court has found that the Board decision under review did not address;

3. Determine whether preponderant evidence exists to show that Maj. Henrikson's sinusitis and/or radiculopathy, either alone or collectively with other medical conditions, rendered him unfit to perform the duties of his office, grade, rank, or rating;

4. Determine the appropriate rating to be assigned to Maj. Henrikson's unfitting conditions; and

5. Provide a complete explanation of the Board's determinations.

On remand, Maj. Henrikson should be permitted to submit any additional relevant evidence and argument.

The remand proceedings must be completed within six months of the date of this decision. The parties shall file a joint report every sixty days advising the Court of the status of the proceedings on remand.

The Court will retain jurisdiction over the case during the course of the proceedings on remand. The Court **STAYS** proceedings in the instant case during that time.

Pursuant to RCFC 52.2(e), the parties shall file notice with the Court within thirty days of the Board's decision on remand stating whether that decision affords a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court.

The Clerk is directed to serve a copy of this Opinion and Order upon the Board at the following address:

Troy J. McIntosh, Executive Director
Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmers Lane
Joint Base Andrews NAF Washington, MD 20762-6435


**IT IS SO ORDERED.**


        s/ Elaine D. Kaplan
        ELAINE D. KAPLAN
        Chief Judge