# In the United States Court of Federal Claims

|  |  |
|---|---|
| PETER R. HENRIKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-1899C |
| v. ) | (Filed: August 26, 2024) |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

Jason E. Perry, Wellington, FL, for Plaintiff.

Anthony F. Schiavetti, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were, Eric P. Bruskin, Assistant Director, Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General, for Defendant. Capt. Jessica Vasil, Litigation Attorney, United States Air Force, Joint Base Andrews, MD, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiff in this military pay case is Major (Ret.) Peter Henrikson, a former fighter pilot and veteran of the United States Marine Corps Reserve, the United States Air Force, the Minnesota Air Guard Reserves, and the United States Air Force Reserves.[1] The case is before the Court for the second time on review of a decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board"). See Henrikson I, 162 Fed. Cl. at 594. In that decision, the Board (on remand from the Court in Henrikson I), directed that Maj. Henrikson's records be corrected to show that he was retired with retirement pay in March 2016 because his sciatica/intervertebral disc syndrome and radiculopathy of his left leg had rendered him unfit to reasonably perform his duties with the Air Force Reserves. See Admin. R. on Remand at 375–76, ECF No. 42-1 [hereinafter AR]; 10 U.S.C. § 1201(a) (establishing entitlement to immediate

---

[1] As described in Henrikson v. United States, 162 Fed. Cl. 594, 599 (2022) [hereinafter Henrikson I], Maj. Henrikson began his military service in 1994 when he enlisted in the United States Marine Corps Reserve. In 1998, he transferred to active duty as a pilot trainee in the Air Force Officer Training School and then served on active duty in the Air Force as an F-16 pilot until July 2008. Id. Thereafter, he transferred to the Minnesota Air National Guard, where he served as a pilot in the Active Guard and Reserve Program. Id. In 2012, he was honorably discharged from the Air National Guard but continued to serve part time in the United States Air Force Reserve until March 2016. Id.

retirement for eligible service members who are "unfit to perform the duties of [their] office, grade, rank, or rating because of physical disability incurred while entitled to basic pay").

The Board further found, however, that neither of these unfitting conditions was combat-related. AR at 376–77. In addition, it concluded that a third medical condition Maj. Henrikson incurred during his service—sinusitis—did not prevent him from reasonably performing his duties, which it determined were administrative in nature and did not include flying. Id. at 376. The Board therefore recommended that Maj. Henrikson's records be corrected to reflect that he retired with a 40% disability rating based on his sciatica/intervertebral disc syndrome and his left leg radiculopathy. Id. at 377.

Maj. Henrikson now challenges both the Board's finding that his sciatica/intervertebral disc syndrome and radiculopathy were not combat-related, and its determination that his sinusitis was not an unfitting condition. The parties have filed cross-motions for judgment on the administrative record regarding the Board's determination that Maj. Henrikson's sinusitis was not an unfitting condition. See Pl.'s Mot. J. Admin. R., ECF No. 45 [hereinafter Pl.'s MJAR]; Def.'s Partial Mot. to Dismiss and Cross-Mot. J. Admin. R., ECF No. 48 [hereinafter Def.'s Cross-MJAR]. In addition, the government has moved to dismiss Count II of Maj. Henrikson's complaint concerning the Board's combat-relatedness finding pursuant to RCFC 12(b)(1) or, in the alternative, RCFC 12(b)(6). See Def.'s Cross-MJAR at 1.

For the reasons set forth below, the government's motion to dismiss Count II is **GRANTED**, and Count II is dismissed without prejudice based on lack of subject-matter jurisdiction. In addition, the government's motion for judgment on the administrative record, ECF No. 48 is **GRANTED**. Maj. Henrikson's motion for judgment on the administrative record, ECF No. 45, is **DENIED**.

## BACKGROUND

### I.     The Air Force's Initial Disability Determination

Section 1201(a) of title 10 states that "[u]pon a determination by the Secretary concerned that [an eligible service member] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a). Entitlement to disability retirement is determined through the Disability Evaluation System ("DES") that each military department is required to establish. See App. to Def.'s Cross-MJAR at 1, ECF No. 48-1 [hereinafter Def.'s App.] (Department of Defense Instruction ("DoDI") 1332.18).

The provisions of the Air Force's DES and the evaluation of Maj. Henrikson's medical conditions are discussed in detail in Henrikson I, 162 Fed. Cl. at 597–602. As described there, in December 2014, a Medical Evaluation Board ("MEB") concluded that Maj. Henrikson had incurred several potentially unfitting medical conditions during his military service, including sinusitis, "[r]ecurrent nephrolithiasis/ureterolithiasis" (i.e., kidney stones), and sciatica/intervertebral disc syndrome. Id. at 599. In light of these findings, the MEB referred Maj. Henrikson to an Informal Physical Evaluation Board ("IPEB") for an evaluation of the extent to which the identified conditions rendered him unfit to perform the duties of his office, grade, rank, or rating. Id.

Initially, the IPEB concluded that the only unfitting condition from which Maj. Henrikson suffered was sciatica/intervertebral disc syndrome. Id. Later, after the Department of Veterans' Affairs ("VA") supplied the Air Force with its ratings for each of Maj. Henrikson's medical conditions—including those that the IPEB did not find unfitting—the IPEB added radiculopathy as a second unfitting condition. Id. at 600. The IPEB adopted the VA's ratings for both the radiculopathy (20%) and intervertebral disc syndrome (20%) for a combined 40% disability rating. Id.

While the 40% disability rating that the IPEB assigned would have entitled Maj. Henrikson to retire immediately with retired pay, Maj. Henrikson was dissatisfied with its findings regarding his sinusitis. He therefore requested that a Formal Physical Evaluation Board ("FPEB") be convened. Id. As it turned out, however, the FPEB not only rejected Maj. Henrikson's contention that his sinusitis was unfitting, but it also set aside the IPEB's finding that Maj. Henrikson's radiculopathy was unfitting. Id. at 601. The FPEB therefore "recommended that [Maj. Henrikson] be discharged with severance pay based on intervertebral disc syndrome at a 20% disability rating." Id.

The Secretary of the Air Force Personnel Council ("SAFPC") concurred with the FPEB's determination. Id. at 601–02. After SAFPC's decision became final on January 12, 2016, Maj. Henrikson exercised his right under 10 U.S.C. § 1209 to be transferred to the Inactive Status List Reserve Section, rather than being separated with severance pay. Id. at 602; see also 10 U.S.C. §§ 1209, 12735. His transfer was effective March 28, 2016. Henrikson I, 162 Fed. Cl. at 602.

## II. The Board's First Decision

In 2017, Maj. Henrikson petitioned the AFBCMR for relief from the FPEB's fitness decision. Id. at 602–03. Maj. Henrikson contended that the FPEB and SAFPC improperly based their fitness determinations on his ability to perform administrative tasks rather than his ability to "pilot an F-16 aircraft in a combat or worldwide deployable environment." Id. at 603. He argued that the evidence showed that his sinusitis, back pain, and radiculopathy rendered him "unable to pilot an F-16 in any environment, much less in a combat or deployed environment." Id. He requested that his military records be corrected to reflect his sinusitis and radiculopathy as unfitting conditions, and that he be retired with a combined 60% disability rating and retirement pay effective March 2016. Id. at 602–03.

The Board denied Maj. Henrikson's request that it correct his records. As described in detail in Henrikson I, it upheld the FPEB's conclusions based on the findings and recommendations of its Medical Advisor. Id. at 603–04.

## III. This Court's Decision in Henrikson I

Maj. Henrikson filed the present lawsuit challenging the Board's initial decision on September 24, 2021. Id. at 604. On October 31, 2022, the Court granted Maj. Henrikson's motion for judgment on the administrative record and denied the government's cross-motion. Id. at 597.

The Court held that the AFBCMR had failed to sufficiently explain the rationale for its decision that neither Maj. Henrikson's sinusitis nor his radiculopathy were unfitting conditions. Specifically, the Court observed that "neither the Board nor its Medical Advisor addressed what the Board seemed to acknowledge was Maj. Henrikson's central contention: that the FPEB and

3

SAFPC failed to focus their fitness determinations on the effect of his radiculopathy and sinusitis on his ability to pilot an F-16 aircraft in a combat or deployed environment." Id. at 607. Instead, they focused on the effect of those conditions on his ability to perform the administrative work assigned to him beginning in 2012 when he joined the Air Force Reserves. Id. The Court noted that "the question of which duties are the proper focus of the fitness inquiry" was "a critical and potentially outcome-determinative one," and that it could not conduct judicial review of the Board's decision "without understanding the benchmarks against which the Board evaluated Maj. Henrikson's fitness." Id. at 607–08.

The Court also found that the Board had failed to discuss several seemingly relevant pieces of evidence that might contradict the FPEB's findings on whether Maj. Henrikson's radiculopathy and sinusitis rendered him unfit to perform either his fighter pilot duties or the administrative tasks he had been assigned. Id. at 608–09. These included a letter written by Maj. Henrikson's commanding officer, a 2016 medical report, a 2014 narrative summary written by Maj. Henrikson's Flight Surgeon, and an undated letter authored by Maj. Henrikson's ENT doctor. Id. (summarizing the listed documents).

Because it found the Board's decision did not reflect its consideraion of these matters, the Court determined that a remand to the Board was necessary. Id. at 609. Among other things, the Court instructed the AFBCMR to "identify the duties of Maj. Henrikson's office, grade, rank, or rating that he could reasonably be expected to perform, and whether those duties included piloting aircraft" and "review and consider all relevant evidence related to the impact of Maj. Henrikson's sinusitis and radiculopathy on his fitness to perform the duties of his office, grade, rank, or rating" that it identified. Id. at 610.

### IV. Proceedings on Remand

#### A. The SAFPC's Recommendation

On remand, the SAFPC recommended to the Board that Maj. Henrikson's radiculopathy be found unfitting by virtue of the combined effect of that condition and his intervertebral disc syndrome on his ability to perform his duties. Id. at 784–85. On the other hand, the SAFPC concluded that Maj. Henrikson did not prove by a preponderance of the evidence that his sinusitis was unfitting or that his unfitting conditions (radiculopathy and intervertebral disc syndrome) were combat-related. Id. at 785.

The SAFPC found that at the time of Maj. Henrikson's discharge, his office, grade, rank, or rating "related to administrative duties." Id. at 786. It found that Maj. Henrikson "was assigned to a non-flying position with the Air Force Reserve." Id. "Because he occupied a non-flying position," it reasoned, "the determination as to whether he was unfit to his office, grade, [rank], or rating rightfully did not relate to flying duties, but related to his permanent non-flying duties," which it characterized as "administrative in nature." Id. at 786–87. His sinusitis, the SAFPC concluded "was not so severe as to preclude him from satisfactory performance of his military duties, which did not include flying." Id. at 787. Further, it observed that paragraph 3.1.5 of Air Force Instruction ("AFI") 48-123, entitled "Medical Examination and Standards," "explicitly states [that] inactive flyers do not need to maintain Flying Class II standards, which are foundational to assessment of a fit/unfit state." Id. at 786.

4

Based on the foregoing, the SAFPC recommended that the Board partially grant Maj. Henrikson's request to correct his record to reflect his retirement based on disability in March 2016 with a compensable percentage of 40% (20% disability rating for his sciatica/intervertebral disc syndrome and 20% rating for his radiculopathy). Id. at 787–88.

### B. The Board's Decision

The Board completed remand proceedings and rendered a final decision on October 3, 2023. Id. at 369. In that decision, the Board endorsed the SAFPC's finding that Maj. Henrikson's sinusitis was not unfitting. Id. at 376. The Board stated that Maj. Henrikson "was assigned to a non-flying position as a traditional reservist since 2012." Id. His duties, the Board found, included tasks "such as developing plans and policies, monitoring operations, and coordinating squadron activities." Id. The Board concluded that there was "insufficient evidence to suggest that [Maj. Henrikson's chronic allergies, sinusitis, and sleep apnea] were unfit to the level [that] he was unable to reasonably perform his non-flying duties." Id.

The Board further concluded, in agreement with the SAFPC, that Maj. Henrikson had not established that his radiculopathy and sciatica/intervertebral disc syndrome were combat-related. Id. It stated that Maj. Henrikson's evidence was "anecdotal and speculative," and that Maj. Henrikson had "provide[d] no clear nexus to demonstrate how or when hazardous service or instrumentality of war spurred the contended conditions." Id. at 374, 376.

## V. The Present Action

Maj. Henrikson challenged the Board's decision on remand in an amended complaint filed on November 18, 2023. Am. Compl., ECF No. 38. In Count I of that complaint, Maj. Henrikson claims that it was arbitrary and capricious for the Board to conclude that his sinusitis did not prevent him from reasonably performing the duties of his position, which he maintains included piloting an F-16 aircraft. Id. ¶¶ 20–22. In Count II, Maj. Henrikson alleges that the Board erred in concluding that his unfitting conditions were not combat-related. Id. ¶¶ 23–26.

Maj. Henrikson filed a motion for judgment on the administrative record ("MJAR") on January 26, 2024. ECF No. 45. The government filed its motion to dismiss and cross-MJAR on April 12, 2024. ECF No. 48. Maj. Henrikson filed a response on May 10, 2024, Pl.'s Resp. & Reply to Def.'s Cross-MJAR, ECF No. 49 [Pl.'s Resp. & Reply], and the government filed its reply on June 28, 2024, Def.'s Reply to Pl.'s Resp. & Reply, ECF No. 54. The Court held oral argument on the pending motions on August 15, 2024. See Order, ECF No. 56.

## DISCUSSION

### I. The Government's Motion to Dismiss Count II

As noted, in Count II of Maj. Henrikson's amended complaint, he challenges the Board's findings that neither of his unfitting conditions was combat-related and he seeks correction of his records to reflect his entitlement to Combat Related Special Compensation ("CRSC") under 10 U.S.C. § 1413a. Am. Compl. ¶¶ 23–26. Because the Court agrees with the government that it lacks jurisdiction over Count II, the government's motion to dismiss under RCFC 12(b)(1) is granted.

The United States Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of

Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). While this provision serves as a waiver of sovereign immunity and a jurisdictional grant, it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). Thus, for this Court to have jurisdiction, a plaintiff must establish that "a separate source of substantive law . . . creates the right to money damages" from the United States. Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Moreover, under the Tucker Act the Court has authority to award money damages, but not equitable relief unless such relief is "an incident of and collateral to" a money judgment. Porter v. United States, 131 Fed. Cl. 552, 560 (2017) (citing James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998). "Thus, the [C]ourt's power to order the correction of a service member's military records depends upon the correction being 'incidental' to an award of monetary relief, usually in the form of increased payments." Porter, 131 Fed. Cl. at 560 (citations omitted).

The statutory provision that establishes a service member's entitlement to CRSC, 10 U.S.C. § 1413a, constitutes a substantive source of law that creates a right to secure money damages from the United States. It states, with exceptions not relevant here, that "the Secretary concerned shall pay [CRSC] to each eligible combat-related disabled uniformed services retiree who elects benefits under this section." 10 U.S.C. § 1413a(a).

But the Board decision before the Court did not address whether Maj. Henrikson's unfitting conditions were combat-related for purposes of 10 U.S.C. § 1413a. The Board instead was reviewing whether those conditions were combat-related "as defined in 26 U.S.C. [§] 104," AR at 370, or whether they were "incurred in a combat zone" or "during the performance of duty in combat-related operations as designated by the Secretary of Defense" under section 1646(a) of the National Defense Authorization Act ("NDAA") for Fiscal Year 2008, 10 U.S.C. § 1212, see AR at 443 (AF Form 356, "Findings and Recommended Disposition of USAF Physical Evaluation Board," Boxes 9F and 10E).

Section 104 of title 26 exempts certain combat-related compensation from gross income for tax purposes. See 26 U.S.C. §§ 104(a)(4); 104(b)(2)(A); 104(b)(3). This Court lacks jurisdiction to direct that a service member's payments be afforded favorable tax treatment under 26 U.S.C. § 104 because "that form of equitable relief is not collateral or incidental to" a monetary award authorized by a money-mandating statute. Pearl v. United States, 111 Fed. Cl. 301, 308 (2013).

Moreover, section 1646(a) of the 2008 NDAA, entitled "Enhancement of Disability Severance Pay For Members of the Armed Forces" does not concern CRSC. Section 1646(a) amended 10 U.S.C. §1212(d). The latter now provides that the amount of disability severance pay a member receives will not be deducted from the compensation for the same disability that the member receives from the VA if the member "incurred [the disability] in line of duty in a combat zone" or "during performance of duty in combat-related operations as designated by the Secretary of Defense." 10 U.S.C. § 1212.

Although the Board did not decide Maj. Henrikson's entitlement to CRSC, it could not have done so because he never elected to receive CRSC as required by statute. See Kaster v. United States, 158 Fed. Cl. 86, 92 (2022). Department of Defense ("DoD") regulations

promulgated pursuant to its authority under 10 U.S.C. § 1413a(d) specify that entitlement to CRSC is determined through a process that is separate from the Disability Evaluation System. That process is initiated when an eligible service member elects CRSC by submitting DoD DD Form 2860 to the appropriate branch of the military. See Def.'s App. at 462 (Dept. of Def., DoD 7000.14-R, 7B DoD Financial Management Regulation § 630301 (2019), stating that "[a] member may not be paid CRSC unless he or she has applied for and elected to receive compensation under the CRSC program by filing an application on DoD (DD) Form 2860 . . . with the Military Department from which he or she retired"); see also Def.'s Supp. App. at 4, ECF No. 54-1 (Air Force CRSC Program Rule 2) (stating that "[r]etirees may not be paid CRSC unless they have applied for and elected to receive compensation under the CRSC program by filing a claim with the Military Department from which they retired").

Significantly, once a member of the Air Force elects CRSC, Air Force rules set out procedures for the preliminary review of the claim and its consideration by a CRSC board. See Def.'s Supp. App. at 6–11 (Air Force CRSC Program Rule 3). The composition, operations, and rules of evidence that apply to the CSRC board are also set forth in Air Force regulations. Id. Those rules expressly distinguish combat-relatedness findings that are made through the DES process (as they were here) and those that are made in the context of determining a member's entitlement to CRSC. They state, among other things, that "[c]ombat related determinations for a medical condition made for the purposes of disability evaluation under Chapter 61 Title 10 U.S.C. are considered evidence but are not binding for the award of CRSC." Id. at 7. Further they note that "DES combat related decisions are made when the preponderance of evidence, including a Retiree's subjective testimony, indicate combat relation," but that, [i]n contrast, the evidentiary standard for CRSC entitlement is the preponderance of objective evidence, requiring official and corroborated documentation to show combat relation." Id. As a result, the Rules provide, "[w]hen submitting a claim for CRSC, retirees may submit their DES decision documents as evidence, but must also provide corroborating evidence." Id.

To be sure, Maj. Henrikson very recently made an election to receive CRSC on August 12, 2024, when he filed the required forms with the Air Force. See Pl.'s Notice at 1, ECF No. 57. But that CRSC claim has not yet been adjudicated at the agency level by the Air Force's CRSC board or the AFBCMR, and so is not ripe for review. The Court will therefore grant the government's motion to dismiss Count II pursuant to RCFC 12(b)(1).[2]

## II. The Board's Decision that Maj. Henrikson's Sinusitis Was Not an Unfitting Condition

### A. Standard of Review

---

[2] Maj. Henrikson has requested that the Court stay its disposition of the government's motion to dismiss Count II while the Air Force processes his recently submitted application. Pl.'s Resp. & Reply at 4. But RCFC 12(h)(3) states that "if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." The Court therefore denies Maj. Henrikson's request for a stay. It notes, however, that if Maj. Henrikson is dissatisfied with the decision of the CRSC board, he may choose to challenge that decision before the AFBCMR, or he may file a new action here. And, in the event that the case returns to this court, then either party may request that it be transferred to the undersigned in accordance with RCFC 40.1(b).

The Court of Federal Claims reviews decisions of military correction boards based on the administrative record. See, e.g., Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). The Court applies a deferential standard of review that is "'limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)); see also Chappell v. Wallace, 462 U.S. 296, 303 (1983) (decision of the Board for the Correction of Naval Records is "subject to judicial review" and may be set aside if it is "arbitrary, capricious or not based on substantial evidence").

The application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Strand v. United States, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (internal quotation omitted). The Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156.

### B.   Merits

In his MJAR, Maj. Henrikson challenges the Board's finding that during his tenure with the Air Force Reserves his duties were administrative in nature and did not involve flying. He also challenges the Board's conclusion that his sinusitis did not prevent him from reasonably performing those administrative duties. Pl.'s MJAR at 6–9.  The Court concludes that these findings were supported by substantial evidence based on the record as a whole.

First, the Board found that the duties of Maj. Henrikson's office, grade, rank, or rating during the four years he served in the Air Force Reserves included "developing plans and policies, monitoring operations, and coordinating squadron activities," but did not include flying aircraft. AR at 376. This finding is consistent with the duties of Maj. Henrikson's position as reflected in the Air Force Officer Classification Directory ("AFOCD" or "Classification Directory"). Id. at 809.[3]

During his service with the Air Force Reserves, Maj. Henrikson was a "Generalist Pilot," Air Force Specialty Code ("AFSC") 11G3. See id. at 444 (FPEB narrative summary). The job description for that position contained in the Classification Directory was made a part of the record on remand. It states that a service member holding the Generalist Pilot rating[4] "[m]onitors, evaluates, and directs flying operations and training programs," "[d]evelops requirements for equipment and training," "[p]repares and coordinates budgets," "[a]nalyzes rated manpower requirements," "formulates personnel policies," "[p]repares, coordinates and

---

[3] The Classification Directory is a guide to Air Force officer classification codes which "establishe[s] the occupation structure of the Air Force officer force." Id. at 804–05. Its "descriptions and codes identify different types of jobs, and qualifications needed to fill them and succeed in an [Air Force Specialty]." Id. at 805.

[4] The glossary to AFI 36-3212, entitled "Physical Evaluation for Retention Retirement, and Separation" defines "rating" as "[t]he name (such as 'Boatswain's Mate') prescribed for members of an Armed Force in an occupational field." Def.'s App. at 136.

disseminates policy directives and implementing instructions," and "[d]evelops contingency plans." Id. at 809. Notably, unlike the description of the job duties identified for the fighter pilot position Maj. Henrikson had previously held, the duties and responsibilities of a Generalist Pilot do not include piloting aircraft. Compare id. at 808 with id. at 809.

The Board's conclusion that Maj. Henrikson's position was administrative in nature and did not require him to pilot aircraft is also supported by other evidence of record. For example, the narrative summary for the FPEB report contains the observation that Maj. Henrikson served as "a traditional reservist in a non-flying position." Id. at 444. It further states that while Maj. Henrikson "testified to flying actively until his departure from the Minnesota Air National Guard through 2012," he later "transferred to Texas and chose not to continue flying due to conflict with his current job." Id. And the MEB report for Maj. Henrikson, issued on December 23, 2014, reflects that on admission to the Air Force Reserve, Maj. Henrickson did not possess "flying status." Id. at 404 (Box 20).

Maj. Henrikson, in fact, does not argue that flying planes was one of the duties he performed during his service in the Air Force Reserves. His argument instead is that his "actual coded position required holding a flight qualification, under [t]he Air Force Officer Classification Directory," and that, "as an aviator in receipt of Aviation Career Incentive Pay, he was expected to be able to fly." Pl.'s MJAR at 8. Presumably, Maj, Henrikson is referring to the fact that the Classification Directory provides that a "current aeronautical rating" is a qualification required "[f]or award and retention of" the Generalist Pilot specialty code. AR at 809. But AFI 48-123, entitled "Medical Evaluation and Standards," states at paragraph 3.1.5 that "[i]nactive flyers that do not receive aviation pay IAW AFI-402 are not required to maintain Flying Class II standards." AR at 794. And while Maj. Henrikson asserts that he did receive aviation pay during his tenure with the Air Force Reserve, there is no support in the record for that assertion.[5]

Maj. Henrikson also argues that the Board did not comply with the Court's instruction that on remand it identify the duties of Maj. Henrikson's office, grade, rank, or rating. Pl.'s Resp. & Reply at 4–7. He so contends because the Board's decision did not expressly reference the standards set forth in the Classification Directory which specify the duties associated with particular Air Force specialties. Id. at 5.

The Court agrees that the Board's responses to the Court's remand instructions could have been clearer and more comprehensive. In particular, when the Court directed the Board to identify the duties of Maj. Henrikson's "office, grade, rank, or rating," it expected that the Board would supply definitions for each of those terms, identify with specificity the office, grade, rank, or rating Maj. Henrikson held, and then describe the duties associated with each. But while the record on remand includes the job description for a Generalist Pilot, the Board's decision did not

---

[5] Maj. Henrikson points to a leave and earnings statement in the record, dated January 5, 2012, which reflects he received such incentive pay. AR at 811. But in January 2012, Maj. Henrikson was an F-16 pilot with the Minnesota Air National Guard. Henrikson I, 162 Fed. Cl. at 599. He joined the Air Force Reserves later that year, in July. AR at 785.

9

expressly reference that description or affirmatively state that the duties it identified were the duties of Maj. Henrikson's office, grade, rank, or rating.

Nonetheless, a court "may affirm an agency ruling if [it] may reasonably discern that [the agency] followed a proper path, even if that path is less than perfectly clear." Ariosa Diagnostics v. Verinata Health, Inc., 805 F.3d 1359, 1365 (Fed. Cir. 2015) (citing Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285–86 (1974)). Here, the Court is able to infer from the Board's decision and the record developed on remand that the Board used the duties and responsibilities set forth in the AFOCD to determine the duties of Maj. Henrikson's office, grade, rank, or rating. It bases that inference on the similarity between the language the Board used to describe Maj. Henrikson's duties and the language used in the Classification Directory. So understood, and in conjunction with the other evidence in the record, the Board's determinations that those duties were administrative in nature and did not involve flying were supported by substantial evidence in the record as a whole.

Maj. Henrikson also criticizes the Board for failing to "distinguish between vastly different roles within the Air Force, such as between an Airman First Class—a junior enlisted member—and a Field Grade Officer like a Major, or someone assigned to a Finance unit versus a Fighter Wing." Pl.'s Resp. & Reply at 5. But Maj. Henrikson provides no explanation why it was important for the Board to draw these distinctions here; he does not contend that flying aircraft is a duty that is associated with a service member's rank generally, or the rank of Major, in particular.

Having found that the duties of Maj. Henrickson's office, grade, rank, or rating were administrative in nature and did not involve flying, the Board went on to conclude that "the preponderance of evidence does not support [that] his sinusitis was unfitting, either alone or collectively with his other medical conditions." AR at 376. The medical documentation, as the SAFPC noted, indicated only that he needed regular treatment of the condition, and that the condition "could result in some missed duty." Id. at 373. And his sinusitis, the SAFPC explained, "was not so severe [that] it would have caused the premature termination of [Maj. Henrikson's] military career." Id. Further, the Board concluded, there was no evidence that his sinusitis alone prevented his deployment. Id. at 376.

These findings are supported by substantial evidence. As described in the FPEB narrative summary, Maj. Henrikson had "a long history of Rhinosinusitis" and had undergone surgery to treat the condition as far back as 2002. Id. at 444. Maj. Henrikson reported that he experienced three-to-four sinus infections annually that required treatment. Id. at 450. And his medical records showed "sporadic treatment of Rhinosinusitis without complication" and that "no profiles or aeromedical waivers have been levied for the condition." Id. at 444.

Maj. Henrikson's ENT, Dr. John McIntyre, also described his sinusitis as a condition that would likely require treatment from time to time, but that did not necessarily, in and of itself, prevent him from performing in his non-flying position. He stated that Maj. Henrikson's "chronic allergy problems and recurring sinus infections could and will affect his daily work schedule intermittently throughout the year" and that they would "require routine management." Id. at 478. But while he opined that these problems "most certainly did affect his time while flying," he was only willing to say that it "could still affect his current non flying job as well." Id.

Finally, there is no merit to Maj. Henrikson's contention that "the AFBMCR failed to address vital evidence- especially as to Lieutenant Colonel Nelson's opinion regarding the inability to deploy or due unit taskings, even in an administrative role," Pl.'s MJAR at 9. In fact, the Board discussed both Lieutenant Colonel Nelson's opinion regarding his deployability, as well as Dr. McIntire's opinion. AR 376. And while it ultimately agreed with both of them that "his neck and back issues prevented deployment," it found "no indication that his sinusitis alone" did so. Id.

Based on the record before it, it was reasonable for the Board to conclude that preponderant evidence did not establish that Maj. Henrikson's sinusitis prevented him from reasonably performing the duties of the non-flying position he occupied with the Air Force Reserve. The Board's decision was supported by substantial evidence on the record as a whole. It therefore will not be disturbed.

## **CONCLUSION**

For the reasons set forth above, the government's motion to dismiss Count II of Maj. Henrikson's amended complaint, ECF No. 48, is **GRANTED**. The government's cross-motion for judgment on the administrative record, ECF No. 48, is also **GRANTED**. Maj. Henrikson's motion for judgment on the administrative record, ECF No. 45, is **DENIED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge